IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

EDGARDO L. BIBILONI DEL VALLE,

    Plaintiff,

    v.

THE COMMONWEALTH OF PUERTO
RICO, et al.,

    Defendants.

CIVIL NO. 07-1362 (RLA)

### ORDER IN THE MATTER OF
### DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

The COMMONWEALTH OF PUERTO RICO ("COMMONWEALTH"), the P.R. POLICE DEPARTMENT ("PR-PD"), ANGEL RIVERA and GALO SEGARRA - the remaining defendants in these proceedings - have moved the court to enter summary judgment in their favor and to dismiss the claims asserted against them in this action. The court having reviewed the arguments presented by the parties as well as the evidence submitted in support thereof hereby disposes of the motion as follows:

### I. BACKGROUND

This action was instituted by EDGARDO BIBILONI against the local government and the two aforementioned individually-named defendants in their personal capacity asserting federal causes of action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, 2000e-3(a) (Title VII), as well as under 42 U.S.C. § 1983 for breach of the due process and equal protection clauses of the United States Constitution.

Additionally, plaintiff claims violation of the Puerto Rico anti-discrimination statutes, Act No. 17 of April 22, 1988, P.R. Laws Ann. tit. 29, § 155 (2002) (Law 17) and Law 69 of July 6, 1985, as amended, P.R. Laws Ann. tit. 29, § 1321-1341 (2002) (Law 69) as well as the local tort provisions, arts. 1802 and 1803 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, §§ 5141 and 5142 (1990) under our supplemental jurisdiction.

## II. SUMMARY JUDGMENT STANDARD

Rule 56(c) Fed. R. Civ. P., which sets forth the standard for ruling on summary judgment motions, in pertinent part provides that they shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Sands v. Ridefilm Corp., 212 F.3d 657, 660-61 (1st Cir. 2000); Barreto-Rivera v. Medina-Vargas, 168 F.3d 42, 45 (1st Cir. 1999). The party seeking summary judgment must first demonstrate the absence of a genuine issue of material fact in the record. DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir. 1997). A genuine issue exists if there is sufficient evidence supporting the claimed factual disputes to require a trial. Morris v. Gov't Dev. Bank of Puerto Rico, 27 F.3d 746, 748 (1st Cir. 1994); LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993), *cert. denied*, 511 U.S. 1018, 114 S.Ct. 1398, 128 L.Ed.2d 72 (1994). A fact is material if

it might affect the outcome of a lawsuit under the governing law. Morrissey v. Boston Five Cents Sav. Bank, 54 F.3d 27, 31 (1st Cir. 1995).

"In ruling on a motion for summary judgment, the court must view 'the facts in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor.'" Poulis-Minott v. Smith, 388 F.3d 354, 361 (1st Cir. 2004) (citing Barbour v. Dynamics Research Corp., 63 F.3d 32, 36 (1st Cir. 1995)). "In marshaling the facts for this purpose we must draw all reasonable inferences in the light most favorable to the nonmovant. That does not mean, however, that we ought to draw unreasonable inferences or credit bald assertions, empty conclusions, rank conjecture, or vitriolic invective." Caban Hernandez v. Philip Morris USA, Inc., 486 F.3d 1, 8 (1st Cir. 2007) (internal citation omitted, italics in original).

Credibility issues fall outside the scope of summary judgment. "'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'" Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). See also, Dominguez-Cruz v. Suttle Caribe, Inc., 202 F.3d 424, 432 (1st Cir. 2000) ("court should not engage in credibility assessments"); Simas v. First Citizens' Fed. Credit

CIVIL NO. 07-1362 (RLA)                                           **Page 4**

_Union_, 170 F.3d 37, 49 (1st Cir. 1999) ("credibility determinations are for the factfinder at trial, not for the court at summary judgment"); _Perez-Trujillo v. Volvo Car Corp._, 137 F.3d 50, 54 (1st Cir. 1998) (credibility issues not proper on summary judgment); _Molina Quintero v. Caribe G.E. Power Breakers, Inc._, 234 F.Supp.2d 108, 113 (D.P.R. 2002). "There is no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, and no room for the judge to superimpose his own ideas of probability and likelihood. In fact, only if the record, viewed in this manner and without regard to credibility determinations, reveals no genuine issue as to any material fact may the court enter summary judgment." _Cruz-Baez v. Negron-Irizarry_, 360 F.Supp.2d 326, 332 (D.P.R. 2005) (internal citations, brackets and quotation marks omitted).

In cases where the non-movant party bears the ultimate burden of proof, he must present definite and competent evidence to rebut a motion for summary judgment, _Anderson v. Liberty Lobby, Inc._, 477 U.S. at 256-257, 106 S.Ct. 2505, 91 L.Ed.2d 202; _Navarro v. Pfizer Corp._, 261 F.3d 90, 94 (1st Cir. 2000); _Grant's Dairy v. Comm'r of Maine Dep't of Agric._, 232 F.3d 8, 14 (1st Cir. 2000), and cannot rely upon "conclusory allegations, improbable inferences, and unsupported speculation". _Lopez-Carrasquillo v. Rubianes_, 230 F.3d 409, 412 (1st Cir. 2000); _Maldonado-Denis v. Castillo-Rodríguez_, 23 F.3d 576, 581

CIVIL NO. 07-1362 (RLA)                                    **Page 5**

---

(1ˢᵗ Cir. 1994); <u>Medina-Muñoz v. R.J. Reynolds Tobacco Co.</u>, 896 F.2d 5, 8 (1ˢᵗ Cir. 1990).

Any testimony used in support of discriminatory motive in a motion for summary judgment setting must be admissible in evidence, i.e., based on personal knowledge and otherwise not contravening evidentiary principles. Rule 56(e) specifically mandates that affidavits submitted in conjunction with the summary judgment mechanism must "be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." <u>Hoffman v. Applicators Sales and Serv., Inc.</u>, 439 F.3d 9 16 (1ˢᵗ Cir. 2006); <u>Nieves-Luciano v. Hernandez-Torres</u>, 397 F.3d 1, 5 (1ˢᵗ Cir. 2005); <u>Carmona v. Toledo</u>, 215 F.3d 124, 131 (1ˢᵗ 2000). *See also*, <u>Quiñones v. Buick</u>, 436 F.3d 284, 290 (1ˢᵗ Cir. 2006) (affidavit inadmissible given plaintiff's failure to cite "supporting evidence to which he could testify in court"). Additionally, the document "must concern facts as opposed to conclusions, assumptions, or surmise", <u>Perez v. Volvo Car Corp.</u>, 247 F.3d 303, 316 (1ˢᵗ Cir. 2001), not conclusory allegations <u>Lopez-Carrasquillo v. Rubianes</u>, 230 F.3d at 414.

"To the extent that affidavits submitted in opposition to a motion for summary judgment merely reiterate allegations made in the complaint, without providing specific factual information made on the basis of personal knowledge, they are insufficient. However, a

party's own affidavit, containing relevant information of which he has firsthand knowledge, may be self-serving, but it is nonetheless competent to support or defeat summary judgment." Santiago v. Centennial, 217 F.3d 46, 53 (1st Cir. 2000) (internal citations and quotation marks omitted).

"A court is not obliged to accept as true or to deem as a disputed material fact each and every unsupported, subjective, conclusory, or imaginative statement made to the Court by a party." Garcia v. Bristol-Myers Squibb Co., 535 F.3d 23, 31 n.5 (1st Cir. 2008) (internal citation, brackets and quotation marks omitted).

### III. FACTUAL BACKGROUND

According to plaintiff, while employed as a janitor with the PR-PD he was the object of inappropriate touching and sexual harassment by a fellow janitor which situation was known to and instigated by GALO SEGARRA, his supervisor, who failed to take any corrective action. Plaintiff contends that he was subjected to retaliatory harassment and eventual termination from employment for having complained of the sexually charged environment.

The evidence in record shows that plaintiff worked as a "Técnico de Mantenimiento" or janitor, in the General Services Division of the PR-PD.

GALO SEGARRA, Director of the General Services Division, was plaintiff's supervisor at all relevant times.

CIVIL NO. 07-1362 (RLA)                                                Page 7

---

**Domestic Violence Incident**

Plaintiff was involved in a domestic violence incident with his former wife, JOHANNA TORRES BURGOS, on February 2, 1999.

In a sworn statement taken on February 16, 2000, by an investigating officer ascribed to the PR-PD Division of Domestic Violence and Sexual Harassment, JOHANNA TORRES BURGOS indicated that she was again living with plaintiff within six months after the event; his conduct had changed significantly; she had no interest in pursuing the matter any further and refused to answer any questions on the subject at that time.

Plaintiff claims that a second Letter of Resolution of Charges recommending his termination based on this incident was issued on June 22, 2006, that is, more than seven years after the event.

**Elevator Incident**

According to a memorandum dated October 5, 2005, subscribed by MIGUEL RIVERA CLAUDIO, Investigative Agent for the PR-PD Confidential Investigations Division, on September 30, 2005, he received an anonymous telephone call regarding an incident involving plaintiff and MARGARITA FIGUEROA CARRASQUILLO.

The memorandum indicates that at the end of June 2005, while MRS. FIGUEROA CARRASQUILLO was about to take the elevator on the eleventh floor of their office building, she was stopped by plaintiff who asked her if she knew a certain "John Doe". When she inquired who that person was, plaintiff asked her to check on the screen of his

cellular telephone where a penis was shown. MRS. FIGUEROA CARRASQUILLO reacted by telling plaintiff that this was disrespectful and left.

The memorandum further notes that on September 30, 2005, MR. RIVERA CLAUDIO interviewed MRS. FIGUEROA CARRASQUILLO who confirmed the event but declined to press charges against plaintiff.

On October 18, 2005, FRANCISCO A. QUIÑONES RIVERA, ESQ., PR-PD Auxiliary Superintendent of Public Integrity, referred the incident involving MRS. FIGUEROA CARRASQUILLO to LT. I VILMA H. HERNANDEZ BERMUDEZ, PR-PD Director of the Domestic Violence and Sexual Harassment Bureau, for an administrative investigation.

On October 19, 2005, MRS. FIGUEROA CARRASQUILLO provided LT. I HERNANDEZ BERMUDEZ with a sworn statement indicating that she did not want to press charges against plaintiff because she did not consider the incident sexual harassment but rather it showed a lack of respect.

On December 2, 2005, LT. I HERNANDEZ BERMUDEZ issued a Grievance Report wherein she concluded that "even though Mrs. Margarita Figueroa Carrasquillo does not have any kind of interest in the administrative grievance for alleged sexual-harassment, the Puerto Rico Police takes action in the matter because the agency can not tolerate this kind of behavior between the personnel as is stipulated in the 'Regulation to [E]stablish the Public Policy and Procedure to

CIVIL NO. 07-1362 (RLA)                                            **Page 9**

Filed [sic] Grievances of Sexual Harassment in the Puerto Rico Police No. 6508.'"[1]

The Report recommended that plaintiff be issued a warning.

According to plaintiff, on June 14, 2006, a first Letter of Resolution of Charges recommending his termination due to the elevator incident was issued.

**Complaint of Sexual Harassment**

On October 25, 2005, plaintiff filed a complaint with the PR-PD Sexual Harassment Bureau alleging that he was the victim of sexual harassment at work by a fellow janitor, ANGEL RIVERA, which conduct was instigated by his supervisor, GALO SEGARRA.

On March 2, 2006, LT. I VILMA HERNANDEZ BERMUDEZ rendered a Report regarding plaintiff's sexual harassment complaint.

Based on the testimony of various witnesses, the Report concluded that, rather than plaintiff being the victim of sexual harassment on the part of ANGEL RIVERA, both plaintiff and co-worker MIGUEL ANGEL ALICEA BRUNO consistently abused ANGEL RIVERA, who was handicapped (deaf and dumb).

The Report recommended that the following sanctions be imposed:

| | |
|---|---|
| Plaintiff: | Termination |
| MIGUEL ANGEL ALICEA BRUNO: | Termination |
| GALO SEGARRA: | Ten days suspension |

---

[1]   Docket No. 59-13 p. 2.

CIVIL NO. 07-1362 (RLA)                                        **Page 10**

On September 19, 2006, a third Resolution of Charges was issued proposing plaintiff's removal based on the investigation results regarding the aforementioned conduct.

Upon plaintiff's petition, an administrative hearing regarding this matter was held on May 16, 2007. Via a letter dated November 20, 2007, plaintiff was notified of the PR-PR's decision to remove him from employment.

Plaintiff was subsequently terminated from his job at the PR-PD.

**Retaliation**

On December 6, 2005, plaintiff filed a claim for retaliation with the Puerto Rico Labor Department Anti-Discrimination Unit alleging that shortly after he filed the aforementioned sexual harassment complaint, the PR-PD filed a sexual harassment claim against him based on an anonymous phone call even though the alleged victim had no interest in pressing charges.

On November 13, 2006, plaintiff filed a retaliation claim with the EEOC.

On January 29, 2007, the EEOC issued its notice of right to sue letter.

**IV. TITLE VII**

**A. <u>Sexual Harassment</u>**

Defendants have moved us to dismiss plaintiff's sexual harassment cause of action for failure to state a colorable claim as well as on timeliness grounds.

In his opposition, plaintiff clarifies that he is not pursuing a sexual harassment claim through these proceedings. He specifically noted that this action "is not a sexual harassment case; it is a retaliation case because he was fired and retaliated, because he [had] filed before a claim for sexual harassment at the EEOC."[2] Rather, "the **only cause of action** asserted in the complaint is based on his termination from employment allegedly due to **retaliation** for having filed a prior claim at the EEOC which it [sic] was for sexual harassment."[3]

Based on the foregoing, we need not address the arguments presented by defendants in their motion addressing alleged legal deficiencies and untimeliness[4] pertaining to a sexual harassment cause of action.

### B. Retaliation

"Title VII's anti-retaliation provision, 42 U.S.C. § 2000e-3(a), states that it is unlawful for an employer to discriminate against an employee because 'he has opposed any practice made an unlawful employment practice..., or because he has made a charge, testified, assisted, or participated in any matter in an investigation,

---

[2]   Plaintiff's Opposition (docket No. 62) ¶ 11 p. 4.

[3]   *Id.* (emphasis ours).

[4] Defendants' arguments regarding timeliness in their summary judgment petition are addressed exclusively to the sexual harassment claims.

proceeding, or hearing.'" <u>DeCaire v. Mukasey</u>, 530 F.3d 1, 19 (1st Cir. 2008).

The interests sought to be protected by Title VII's anti-discrimination mandate differ from those underlying its retaliation clause. "The substantive provision seeks to prevent injury to individuals based on who they are, *i.e.*, their status. The anti-retaliation provision seeks to prevent harm to individuals based on what they do, *i.e.*, their conduct." <u>Burlington N. & Santa Fe Ry. Co. v. White</u>, 548 U.S. 53, 63, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006). "It therefore does not matter for retaliation purposes whether [the employer] would have treated a male [employee] the same way he treated [plaintiff]. The relevant question is whether [the employer] was retaliating against [plaintiff] for filing a complaint, not whether he was motivated by gender bias at the time." <u>DeCaire</u>, 530 F.3d at 19.

Hence, for retaliation purposes "[t]he relevant conduct is that which occurred *after* [plaintiff] complained about his superior's [discriminatory] related harassment." <u>Quiles-Quiles v. Hendeson</u>, 439 F.3d 1, 8 (1st Cir. 2006) (italics in original).

"The evidence of retaliation can be direct or circumstantial." <u>DeCaire</u>, 530 F.3d at 20. Unless direct evidence is available, Title VII retaliation claims may be proven by using the burden-shifting framework set forth in *McDonnell Douglas*. "In order to establish a prima facie case of retaliation, a plaintiff must establish three

elements. First, the plaintiff must show that he engaged in a protected activity. Second, the plaintiff must demonstrate he suffered a materially adverse action, which caused him harm, either inside or outside of the workplace. The impact of this harm must be sufficient to dissuade a reasonable worker from making or supporting a charge of discrimination. Third, the plaintiff must show that the adverse action taken against him was causally linked to his protected activity." Mariani-Colon v. Dep't of Homeland Sec., 511 F.3d 216, 223 (1st Cir. 2007) (citations and internal quotation marks omitted); Moron-Barradas v. Dep't of Educ. Of Commonwealth of P.R., 488 F.3d 472, 481 (1st Cir. 2007); Quiles-Quiles, 439 F.3d at 8.

"Under the *McDonnell Douglas* approach, an employee who carries [his] burden of coming forward with evidence establishing a prima facie case of retaliation creates a presumption of discrimination, shifting the burden to the employer to articulate a legitimate, non-discriminatory reason for the challenged actions... If the employer's evidence creates a genuine issue of fact, the presumption of discrimination drops from the case, and the plaintiff retains the ultimate burden of showing that the employer's stated reason for the challenged actions was in fact a pretext for retaliating." Billings v. Town of Grafton, 515 F.3d 39, 55 (1st Cir. 2008) (citations, internal quotation marks and brackets omitted).

"[A]n employee engages in protected activity, for purposes of a Title VII retaliation claim, by opposing a practice made unlawful by

CIVIL NO. 07-1362 (RLA)                                          **Page 14**

Title VII, or by participating in any manner in an investigation or proceeding under Title VII." Mariani-Colon, 511 F.3d at 224.

Plaintiff's prima facie burden "is not an onerous one." Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d. 6, 26 (1st Cir. 2004). *See also*, Dennis v. Osram Sylvania, Inc., 549 F.3d 851, 858 (1st Cir. 2008) (citing DeCaire, 530 F.3d at 19) (deemed a "'relatively light burden'").

However, the effects of the retaliation must be materially adverse to plaintiff. "[Title VII's] anti-retaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm." Burlington, 548 U.S. at 67. In order to prevail on a retaliation claim "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id*. at 68. It is not necessary that the conduct at issue affect the employee's "ultimate employment decisions." *Id.* at 67.

The determination of whether a particular action is "materially adverse" must be examined based on the facts present in each case and "should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." Burlington, 548 U.S. at 71  (citation and internal quotation marks omitted).

CIVIL NO. 07-1362 (RLA)                                          **Page 15**

In reaching its decision in <u>Burlington</u>, the Supreme Court considered such factors as whether the duties of a position "were... more arduous and dirtier" when compared to the other position which "required more qualifications, which is an indication of prestige [] and... was objectively considered a better job". *Id.* (citation and quotation marks omitted).

In <u>Billings</u>, the court distinguished between minor incidents which take place in the usual course of a work setting and have no import on an individual's decision to file a discrimination charge and those which might deter an employee from complaining of such conduct. Specifically, the court noted that "some of [the supervisor's] behavior - upbraiding [plaintiff] for her question at the Board of Selectmen meeting, criticizing her by written memoranda, and allegedly becoming aloof toward her - amounts to the kind of petty slights or minor annoyances that often take place at work and that all employees experience and that, consequently, fall outside the scope of the antidiscrimination laws... But we cannot say the same for the other incidents, namely, investigating and reprimanding [plaintiff] for opening the letter from [the supervisor's] attorney, charging her with personal time for attending her deposition in this case, and barring her from the Selectmen's Office. While these measures might not have made a dramatic impact on [plaintiff's] job, conduct need not relate to the terms or conditions of employment to give rise to a retaliation claim. Indeed, we think that these

actions, by their nature, could well dissuade a reasonable employee from making or supporting a charge of discrimination. An employee who knows that, by doing so, she risks a formal investigation and reprimand - including a threat of further, more serious discipline - for being insufficiently careful in light of her pending litigation as well as the prospect of having to take personal time to respond to a notice of deposition issued by her employer in that litigation, might well choose not to proceed with the litigation in the first place." 515 F.3d at 54 (citations, internal quotation marks and brackets omitted).

"It is true that an employee's displeasure at a personnel action cannot, standing alone, render it materially adverse... [but plaintiff] came forward with enough objective evidence contrasting her former and current jobs to allow the jury to find a materially adverse employment action." *Id*. at 53.

Depending on the particular set of facts at hand, "temporal proximity alone can suffice to meet the relatively light burden of establishing a prima facie case of retaliation." DeCaire, 530 F.3d at 19 (citation and internal quotation marks omitted). *See also*, Mariani-Colon, 511 F.3d at 224 ("[T]he 'temporal proximity' between appellant's allegations of discrimination in June 2002 and his termination in August 2002 is sufficient to meet the relatively light burden of establishing a prima facie case of retaliation"); Quiles-Quiles, 439 F.3d at 8 ("[I]n proper circumstances, the causation

element may be established by evidence that there was a temporal proximity between the behavior in question and the employee's complaint"); Calero-Cerezo, 355 F.3d at 25 (three to four months insufficient for causal connection).

Plaintiff carries the burden of presenting admissible evidence of retaliatory intent in response to a summary judgment request. The court need not consider unsupported suppositions. "While [plaintiff] engages in much speculation and conjecture, a plaintiff cannot defeat summary judgment by relying on conclusory allegations, or rank speculation. To defeat summary judgment, a plaintiff must make a colorable showing that an adverse action was taken for the purpose of retaliating against him." Mariani-Colon, 511 F.3d at 224 (citations and internal quotation marks omitted).

Additionally, even though "it is *permissible* for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's discrimination, but doing so is not required, as there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational fact-finder could conclude that the action was discriminatory." DeCaire, 530 F.3d at 19-20 (italics in original).

"[T]here is no mechanical formula for finding pretext. One way to show pretext is through such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's

CIVIL NO. 07-1362 (RLA)                                    **Page 18**

proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and with or without the additional evidence and inferences properly drawn therefrom infer that the employer did not act for the asserted non-discriminatory reasons." Billings, 515 F.3d at 55-56 (citations, internal quotation marks and brackets omitted).

However, courts "should exercise caution in second guessing [employer's] employment decisions. Courts should not act as super personnel departments, substituting their judicial judgments for the business judgments of employers." Dennis, 549 F.3d at 859 (citation and internal quotation marks omitted). "In the absence of any evidence that an employer's decision was pretextual or motivated by discriminatory intent, a court has no right to supersede that decision." Bennett v. Saint Gobain Corp., 507 F.3d 23, 32 (1st Cir. 2007).

Lastly, there are instances where issues of fact regarding the veracity of the allegedly pretextual reasons demand that trial be held to resolve them. See i.e., Billings, 515 F.3d at 56 (citations and internal quotation marks omitted) ("But we think that, under the circumstances of this case, it is the jury that must make this decision, one way or another. As we have advised, where a plaintiff in a discrimination case makes out a prima facie case and the issue becomes whether the employer's stated nondiscriminatory reason is a pretext for discrimination, courts must be particularly cautious

about granting the employer's motion for summary judgment. Such caution is appropriate here, given the factual disputes swirling around the transfer decision.")

In order to adequately establish the necessary causation as part of his prima facie burden, plaintiff must present evidence that the person responsible for the decision at issue either was aware of the protected conduct or "consulted with anyone possessing a motive to retaliate against [plaintiff]... [to] support[] an inference of complicity." Dennis, 549 F.3d at 858 (citation and internal quotation marks omitted).

Even though "[t]emporal proximity can create an inference of causation in the proper case... to draw such an inference, there must be proof that the decisionmaker knew of the plaintiff's protected conduct when he or she decided to take the adverse employment action." Pomales v. Celulares Telefonica, Inc., 447 F.3d 79, 84 (1st Cir. 2006). See also, Freadman v. Metropolitan Property and Cas. Ins. Co., 484 F.3d 91, 106 (1st Cir. 2007) (no causal connection inasmuch as accommodation request made after decision to remove plaintiff made); Randlett v. Shalala, 118 F.3d 857, 862 (1st Cir. 1997) ("[T]he adverse action must have been taken for the purpose of retaliating. And to defeat summary judgment, a plaintiff must point to some evidence of retaliation by a pertinent decisionmaker.")

## C. **Retaliatory Harassment**

In retaliation cases, "[t]he adverse employment action may be satisfied by showing the creation of a hostile work environment or the intensification of a pre-existing hostile environment." Quiles-Quiles, 439 F.3d at 9. *See also*, Noviello v. City of Boston, 398 F.3d 76, 89 (1st Cir. 2005) ("[T]he creation and perpetuation of a hostile work environment can comprise a retaliatory adverse employment action".) "[A] hostile work environment, tolerated by the employer, is cognizable as a retaliatory adverse employment action... This means that workplace harassment, if sufficiently severe or pervasive, may in and of itself constitute an adverse employment action sufficient to satisfy the second prong of the prima facie case for... retaliation cases." *Id.* (under Title VII). "Harassment by coworkers as a punishment for undertaking protected activity is a paradigmatic example of adverse treatment spurred by retaliatory motives and, as such, is likely to deter the complaining party (or others) from engaging in protected activity." *Id.* at 90.

"[R]etaliatory actions that are not materially adverse when considered individually may collectively amount to a retaliatory hostile work environment." Billings, 515 F.3d at 54 n.13.

"In looking at a claim for hostile work environment, we assess whether a plaintiff was subjected to severe or pervasive harassment that materially altered the conditions of his employment. To sustain a claim of hostile work environment, [plaintiff] must demonstrate

that the harassment was sufficiently severe or pervasive so as to alter the conditions of his employment and create an abusive work environment and that the [discriminatory] objectionable conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and [that plaintiff] in fact did perceive it to be so." Thompson v. Coca-Cola Co., 522 F.3d 168, 179 (1st Cir. 2008) (internal citations and quotation marks and brackets omitted).

"The environment must be sufficiently hostile or abusive in light of all of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Prescott v. Higgins, 538 F.3d 32, 42 (1st Cir. 2008) (citation and internal quotation marks omitted); Rios-Jimenez v. Principi, 520 F.3d 31, 43 (1st Cir. 2008); Torres-Negron v. Merck & Co., Inc., 488 F.3d 34, 39 (1st Cir. 2007).

"There is no mathematically precise test we can use to determine when this burden has been met, instead, we evaluate the allegations and all the circumstances, considering the frequency of the discriminatory conduct; its severity; whether it was physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interfered with an employee's work performance." Carmona-Rivera v. Commonwealth of Puerto Rico, 464 F.3d

14, 19 (1st Cir. 2006) (citation and internal quotation marks omitted).

"In determining whether a reasonable person would find particular conduct hostile or abusive, a court must mull the totality of the circumstances, including factors such as the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. The thrust of this inquiry is to distinguish between the ordinary, if occasionally unpleasant, vicissitudes of the workplace and actual harassment." Noviello, 398 F.3d at 92 (citations and internal quotation marks omitted).

Plaintiff must provide "evidence of ridicule, insult, or harassment such that a court could find behavior on the part of the defendants that was objectively and subjectively offensive behavior that a reasonable person would find hostile or abusive." Carmona-Rivera, 464 F.3d at 19 (citation and internal quotation marks omitted). *See also*, Noviello, 398 F.3d at 92 ("rudeness or ostracism, standing alone, usually is not enough to support a hostile work environment claim"); De la Vega v. San Juan Star, Inc., 377 F.3d 111, 118 (1st Cir. 2004) (general claims of "humiliating and discriminatory treatment" not sufficient).

"[I]f protected activity leads only to commonplace indignities typical of the workplace (such as tepid jokes, teasing, or

CIVIL NO. 07-1362 (RLA)                                                    **Page 23**

aloofness), a reasonable person would not be deterred from such activity. After all, an employee reasonably can expect to encounter such tribulations even if she eschews any involvement in protected activity. On the other hand, severe or pervasive harassment in retaliation for engaging in protected activity threatens to deter due enforcement of the rights conferred by statutes." Noviello, 398 F.3d at 92.

Proving retaliatory intent is crucial. Hence, the purpose behind the harassment must be to retaliate for the protected conduct, that is, it must be motivated by plaintiff's exercise of his statutory rights. Carmona-Rivera, 464 F.3d at 20; Quiles-Quiles, 439 F.3d at 9.

Causation may be established by the temporal proximity between the harassment and the protected conduct. *See, i.e.*, *id*. 439 F.3d at 9 (intensified harassment shortly after filing EEOC complaint).

Even though "[t]he existence of a hostile environment is determined by the finder of fact... that does not prevent a court from ruling that a particular set of facts cannot establish a hostile environment as a matter of law in an appropriate case." Billings, 515 F.3d at 47 n.7.

### D. **The Three Retaliatory Events**

Plaintiff cites the same events in support of both his retaliation and retaliatory harassment claims. Thus, we shall examine the charged conduct which took place after plaintiff filed his sexual

harassment claim on October 25, 2005, to determine whether or not they are actionable under either of these discrimination modes.

Plaintiff relies on the three Resolution of Charges Letters and his termination as evidence of retaliation. The first Resolution of Charges Letter, dated June 14, 2006, pertains to the 1999 domestic violence incident whereas the second one, dated June 22, 2006, refers to the elevator episode with MARGARITA FIGUEROA CARRASQUILLO. We are not privy to either of these two letters. All we have before us regarding this correspondence and surrounding events is plaintiff's description thereof in his sworn statement none of which has been challenged by defendants. We do not know the specifics regarding the matters addressed in these documents nor the outcome of the personnel actions proposed thereby.[5]

Lastly, plaintiff points to a third Resolution Charge Letter which resulted from a PR-PD internal investigation and which concluded that plaintiff sexually harassed his co-worker, ANGEL RIVERA. This led to plaintiff's eventual termination.

---

[5] We initially note that the first two Resolution of Charges Letters have not been made part of the record by either party and that plaintiff's references thereto are far from clear. All we know from plaintiff's declaration is that on June 14, 2006, a first Letter of Resolution of Charges purportedly recommending his termination due to the elevator incident involving MARGARITA FIGUEROA CARRASQUILLO was issued. See Unsworn Statement under Penalty of Perjury (docket No. 59-17) ¶¶ 8, 10 pp. 3-4. Plaintiff further avers that on June 22, 2006, a second Letter of Resolution of Charges was issued recommending his termination based on a domestic violence incident with his former wife. Id. ¶¶ 4-5, pp. 2, 3, 5.

CIVIL NO. 07-1362 (RLA)                                         **Page 25**

### 1. Elevator Incident

As to the elevator incident which gave rise to the first Resolution of Charges Letter, there is no dispute that: the same did take place in June 2005; MRS. FIGUEROA CARRASQUILLO was interviewed on September 30, 2005; the investigation was initiated by a report addressed to the PR-PRD Sexual Harassment Bureau on **October 5, 2005**, and that by the time plaintiff submitted his discrimination claim an investigation mandated by the PR-PD Policy regulations had already taken its course. In other words, the matter regarding the aforementioned occurrence which has not been controverted by plaintiff was referred for investigation on **October 18, 2005**, prior to October 25, 2005, the date when plaintiff submitted his sexual harassment claim.

Effects of decisions taken prior to the protected conduct cannot be deemed retaliatory because there is no possible causal relationship between them. "The filing of a complaint cannot be the basis for adverse employment action but it also cannot immunize an employee from action already planned and not dependant on the complaint." Sabinson v. Trustees of Dartmouth Coll., 542 F.3d 1, 5 (1st Cir. 2008).

We find that inasmuch as the investigation regarding the elevator incident pre-dated plaintiff's sexual harassment complaint, he cannot argue that it was carried out with retaliatory animus. Plaintiff having failed at the causal relationship step of his

initial prima facie burden, any attempt to claim retaliation based on this particular incident is rejected.

Accordingly, the retaliatory claim based on the elevator incident is hereby **DISMISSED**.

### 2.   Domestic Violence Incident

In the case of the domestic violence incident, we have no idea as to what, if anything, transpired from the time the event was originally investigated and the time the second Resolution of Charges Letter was purportedly issued which merited action on the part of the PR-PD. Further, we are unaware of the outcome of the letter. The only evidence on record reflects that plaintiff was involved in a domestic violence incident with his former wife, JOHANNA TORRES BURGOS, on **February 2, 1999;** that her sworn statement was taken by the PR-PD on **February 16, 2000,** where she indicated that she had no interest in pursuing the matter, and that an alleged second Letter of Resolution of Charges recommending his termination based on this incident was issued on **June 22, 2006.**

Apart from plaintiff's statement, there is no indication on record as to what triggered PR-PD to issue the June 22, 2006 letter regarding an incident which occurred seven years prior.

As previously noted, plaintiff's burden to prove a prima facie retaliation claim is not onerous. For each claim there must be evidence of plaintiff having engaged in protected conduct, some

materially adverse action taken against plaintiff and a causal relation existing between the two.

The challenged conduct need not be related to the employee's working terms or conditions. Rather, as decreed by the Supreme Court, we must ascertain whether a "reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington, 126 S.Ct. at 2415 (internal citations and quotation marks omitted). In other words, its significance is gauged by its deterrent effect on either the filing or endorsing discrimination complaints.

Further, whether the alleged actions are sufficiently severe must be determined on a case-by-case basis and from the standpoint of a reasonable person in like circumstances. Cotton v. Cracker Barrell Old Country Store, Inc., 434 F.3d 1227, 1234 (11th Cir. 2006). Under particular circumstances, "the existence of an adverse employment action may be a question of fact for the jury when there is a dispute concerning the manner in which the action taken affected the plaintiff-employee." Bergeron v. Cabral, 560 F.3d 1, 6 (1st Cir. 2009).

"Whether an action is sufficient to constitute an adverse employment action for purposes of a retaliation claim must be determined on a case-by-case basis using both a subjective and an objective standard. The employee's subjective view of the

significance and adversity of the employer's action is not controlling; the employment action must be materially adverse as viewed by a reasonable person in the circumstances. Title VII is neither a general civility code nor a statute making actionable the ordinary tribulations of the working place." Cotton v. Cracker Barrel Old Country Store, Inc., 434 F.3d at 1234 (internal citations, quotation marks and brackets omitted).

At this stage of the proceedings, the issue before us is whether a letter recommending termination from employment would dissuade a reasonable person from making or supporting a discrimination charge. An admonishment letter has been deemed to constitute an adverse employment action for purposes of a retaliation claim. Almeyda v. Municipality of Aguadilla, 447 F.3d 85, 97 (1st Cir. 2006).

In this particular case, we find that the risk of termination as purportedly cautioned in the letter is sufficiently severe so as to constitute a materially adverse action for purposes of Title VII. The possibility of such a sanction could undoubtably be reasonably considered by an employee as a deterrent from exercising his anti-discrimination rights. In other words, being exposed to losing his job would likely dissuade a reasonable person from complaining of possible discriminatory conduct.

Based on the limited record before us and with defendants' total failure to refute plaintiff's allegations on this particular point or set forth any non-discriminatory reasons for the proposed

CIVIL NO. 07-1362 (RLA)                                        **Page 29**

---

termination, we must conclude that plaintiff has met his undemanding prima facie burden regarding the domestic violence incident. No explanation has been provided by defendants for issuing a letter in 2006 addressing events which took place in 1999, where the only underlying support is the victim's statement - taken six years prior - declining to provide information. The only apparent intervening event was plaintiff's sexual harassment complaint which plaintiff cites and we must accept absent evidence to the contrary.

Accordingly, the request to dismiss plaintiff's retaliation claim under Title VII based on the second Letter of Resolution of Charges due to the domestic violence incident is **DENIED.**

### 3.   Third Letter of Resolution of Charges and Termination

Lastly, plaintiff contends that his termination pursuant to a third Resolution of Charges Letter was also retaliatory. An investigation report disposing of plaintiff's complaint concluded that rather than being the victim of sexual harassment, plaintiff was instead the aggressor in the sexual harassment of co-worker ANGEL RIVERA.

We can safely conclude that plaintiff met his prima facie burden on this particular cause of action. As previously noted, plaintiff complained of discrimination which constitutes protected conduct and both his employer's letter and eventual cessation of employment with the PR-PD clearly constitute adverse actions. As to the retaliatory motive, plaintiff refers to inculpatory statements allegedly made by

his supervisors CRISTOBAL RIVERA and HECTOR NAVARRO. Specifically, in his declaration plaintiff stated that "Hector Navarro told me the comment that I will be fired due to the complaint of sexual harassment that I filed against Galo Segarra and Angel Rivera".[6] "Cristobal Rivera told me that I will be fired for the complaint that I made to Galo Segarra and to Angel Rivera".[7]

Defendants countered alleging that these events resulted from an exhaustive investigation and not from any retaliatory animus. This position, however, has been put at issue by plaintiff. Even though the investigation report used as grounds for plaintiff's termination cites the testimony of various witnesses attesting to plaintiff's harassing conduct towards ANGEL RIVERA, plaintiff has submitted contradictory information tending to prove that it was he who was the victim of ANGEL RIVERA's harassment. Plaintiff also makes reference to a sworn statement of MIGUEL A. ALICEA BRUNO, his co-worker, citing instances where ANGEL RIVERA engaged in unwanted touching and sexual advances towards plaintiff and that GALO SEGARRA, their supervisor, slighted plaintiff's complaints regarding RIVERA's behavior.[8]

---

[6]   Unsworn Statement under Penalty of Perjury (docket No. 59-17) ¶ 28 pp. 10-11.

[7]   *Id*. ¶ 29 p. 11.

[8]   Sworn Statement of MIGUEL ALICEA BRUNO (docket No. 19-15).

Plaintiff further indicated that ANGEL RIVERA's father was a PR-PD lieutenant[9] and GALO SEGARRA's father a commander at the PR-PD[10] which also raise a possible specter of partiality in the investigation process.

"[W]here a plaintiff in a discrimination case makes out a prima facie case and the issue becomes whether the employer's stated nondiscriminatory reason is a pretext for discrimination, courts must be particularly cautions about granting the employer's motion for summary judgment." Billings, 515 F.3d at 56 (internal citations and quotation marks omitted).

Based on the foregoing, we find that plaintiff has met his burden of presenting evidence that defendants' purportedly non-discriminatory reasons for dismissal might be pretextual.

Accordingly, the request to dismiss the third Letter of Resolution of Charges and his termination as retaliatory under Title VII is **DENIED**.

### 4. Harassment/Hostile Environment

Plaintiff further argues that the aforementioned retaliatory events are also tantamount to a retaliatory hostile work environment. In Noviello the court specifically found that a hostile work environment may be deemed a retaliatory adverse action under Title

---

[9] Unsworn Statement under Penalty of Perjury (docket No. 59-17) ¶ 18 p. 7.

[10] Id. ¶ 19 p. 7.

CIVIL NO. 07-1362 (RLA)                                        **Page 32**

---

VII, 42 U.S.C. § 2000e(3)(a). "This means that workplace harassment, if sufficiently severe or pervasive, may in and of itself constitute an adverse employment action sufficient to satisfy the second prong of the prima facie case for Title VII retaliation cases." Id. at 89. "Harassment by coworkers as a punishment for undertaking protected activity is a paradigmatic example of adverse treatment spurred by retaliatory motives and, as such, is likely to deter the complaining party (or others) from engaging in protected activity." Noviello, 398 F.3d at 90.

"An allegedly retaliatory act must rise to some level of substantiality before it can be actionable. The hostile work environment doctrine, as developed in the anti-discrimination jurisprudence of Title VII, embodies that prerequisite. In order to prove a hostile work environment, a plaintiff must show that [he] was subjected to severe or pervasive harassment that materially altered the conditions of [his] employment. The harassment must be objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so. In determining whether a reasonable person would find particular conduct hostile or abusive, a court must mull the totality of the circumstances, including factors such as the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work

performance. The thrust of this inquiry is to distinguish between the ordinary, if occasionally, unpleasant, vicissitudes of the workplace and actual harassment.

This framework is readily transferable to the retaliatory harassment context. On the one hand, if protected activity leads only to commonplace indignities typical of the workplace (such as tepid jokes, teasing, or aloofness) a reasonable person would not be deterred from such activity. After all, an employee reasonably can expect to encounter such tribulations even if [he] eschews any involvement in protected activity. On the other hand, severe or pervasive harassment in retaliation for engaging in protected activity threatens to deter due enforcement of rights conferred by statutes such as Title VII... "Along this continuing, rudeness or ostracism, standing alone, usually is not enough to support a hostile work environment claim." Noviello, 398 F.3d at 92 (internal citations and quotation marks omitted). "In reaching this conclusion, we take into account the relative ubiquity of the retaliatory conduct, its severity, its natural tendency to humiliate (and, on occasion, physically threaten) a reasonable person, and its capacity to interfere with the p]laintiff's work performance." *Id.* at 93.

We find the hostile work environment scenarios confronted by the courts in the aforementioned cases inapposite to the facts before us. The outstanding retaliatory events are limited to distinct personnel measures sufficiently severe in and of themselves for each one to be

actionable under § 2000e-3(a). In examining the retaliatory conduct charged by plaintiff herein we are not faced with the type of severe and pervasive harassing environment at his workplace necessary to impact on his employment conditions. Rather than classifying these two Resolution of Charges Letters and plaintiff's termination as part of a retaliatory harassment mode, we find that each one constitutes a separate retaliation claim under Title VII.

Accordingly, the retaliatory harassment/hostile environment claim asserted under Title VII is hereby **DISMISSED.**

## VII. § 1983 CLAIMS

Plaintiff also charges violation of 42 U.S.C. § 1983 which reads:

> Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proceeding for redress.

Section 1983 does not create substantive rights but is rather a procedural mechanism for enforcing constitutional or statutory rights. Albright v. Oliver, 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994). The statute, i.e., § 1983 "'is not itself a source of

substantive rights, but a method for vindicating federal rights elsewhere conferred... by the United States Constitution and federal statutes.'" Rodriguez Garcia v. Municipality of Caguas, 354 F.3d 91, 99 (1st Cir. 2004) (citing Baker v. McCollan, 443 U.S. 137, 144 n.3, 99 S.C. 2689, 61 L.Ed.2d 433 (1979)). Hence, it is plaintiffs' burden to identify the particular underlying constitutional or statutory right that is sought to be enforced via judicial proceedings.

In order to prevail in a § 1983 claim plaintiff must bring forth evidence that defendant (1) acted "under color of state law" and (2) deprived plaintiff of a federally protected right. Cepero-Rivera v. Fagundo, 414 F.3d 124, 129 (1st Cir. 2005); Barreto-Rivera v. Medina-Vargas, 168 F.3d 42, 45 (1st Cir. 1999); Rogan v. City of Boston, 267 F.3d 24 (1st Cir. 2001); Dimarco-Zapa v. Cabanillas, 238 F.3d 25, 33 (1st Cir. 2001); Collins v. Nuzzo, 244 F.3d 246 (1st Cir. 2001).

"As an additional corollary, only those individuals who participated in the conduct that deprived the plaintiff of his rights can be held liable." Cepero-Rivera, 414 F.3d at 130. See i.e., Barreto-Rivera, 168 F.3d at 48 (in the context of supervisors they can be held liable solely "on the basis of [their] own acts or omissions"); Diaz v. Martinez, 112 F.3d 1, 4 (1st Cir. 1997); Maldonado-Denis, 23 F.3d at 581; Gutierrez-Rodriguez v. Cartagena, 882 F.2d 553, 562 (1st Cir. 1989). "Such liability can arise out of participation in a custom that leads to a violation of constitutional rights, or by acting with deliberate indifference to the

CIVIL NO. 07-1362 (RLA)                                      **Page 36**

---

constitutional rights of others." <u>Diaz v. Martinez</u>, 112 F.3d at 4 (citations omitted).

"In order for [plaintiff] to succeed on [his] claim of [retaliation he] must demonstrate that defendants were involved in the alleged deprivation of [his] rights, - in this case [the two retaliatory events]. Imposition of liability requires that the conduct complained of must have been *causally connected* to the deprivation." <u>Cepero-Rivera</u>, 414 F.3d at 31 (italics in original) (citations and internal quotation marks omitted).

Thus, as part of his prima facie burden plaintiff must set forth evidence indicative of a causal connection or relationship between the alleged misconduct and the defendants' acts or omissions. "In order to have a valid claim under § 1983, plaintiff[] must show that defendant's actions were the cause in fact of the alleged constitutional deprivation." <u>Sullivan v. City of Springfield</u>, 561 F.2d 7, 14 (1ˢᵗ Cir. 2009).

### A. <u>ANGEL RIVERA - Title VII</u>

Defendants move to dismiss the § 1983 claims asserted against ANGEL RIVERA alleging that codefendant did not act under color of law nor did he deprive plaintiff of a federally protected right.

Apart from conclusory statements regarding defendants in general, the only allegation in the Amended Complaint addressed specifically at codefendant ANGEL RIVERA pertains exclusively to sex discrimination and reads as follows:

18. Codefendants (sic), Mr. Angel Rivera, with his homosexual conduct was the principal cause in the hostile and offensive environment in the workplace and with his action was the person that caused the retaliation against [plaintiff], he never apologized for violating my dignity and for creating an intimidating, hostile and offensive environment in the workplace along with Mr. Segarra.

A careful reading of the pleading reveals that the claims asserted against codefendant ANGEL RIVERA are based essentially on his purportedly sexually harassing conduct which allegedly created a hostile work environment. However, plaintiff has conceded that sexual harassment is not at issue in this litigation. Further, as discussed *ante*, only the retaliatory events pertaining to the domestic violence incident as well as plaintiff's termination based on the PR-PD internal investigation remain as viable Title VII discrimination claims in this case. Yet, there is no evidence suggesting that codefendant ANGEL RIVERA was in any way responsible for either of them.

In carrying out the necessary § 1983 inquiry, attention must be focused not on the alleged sexually harassing events - which plaintiff consistently brings to the surface in his memorandum - but rather on the outstanding retaliatory incidents, i.e., the charges letter based on the domestic violence episode and plaintiff's termination which resulted from the PR-PD internal investigation. In this vein, the court has faced a colossal undertaking in trying to

ascertain the specific legal claims in these proceedings. Not only are the allegations in the complaint overly broad and interspersed with conclusory statements but yet more difficult are plaintiff's arguments in response to the summary judgment request. Despite assertions that sexual harassment is not at issue, plaintiff's opposition exclusively relies on the alleged harassing incidents in his attempt to salvage his § 1983 cause of action against this codefendant. Further, there is a dearth of documentary information pertaining to the allegedly retaliatory memoranda and plaintiff's termination.[11]

Hence, plaintiff having failed to proffer evidence regarding codefendant's personal involvement in either of the two subsisting allegedly retaliatory events, he cannot premise his § 1983 cause of action against ANGEL RIVERA on retaliation.

Based on the foregoing, plaintiff's § 1983 claim against codefendant ANGEL RIVERA based on alleged violations of Title VII is hereby **DISMISSED.**

### B. Equal Protection

Liability under § 1983 based on equal protection principles mandates that plaintiff present sufficient evidence for a trier of

---

[11] Only the September 19, 2006 Resolution of Charges Letter and the November 20, 2007 termination letter were submitted as part of the summary judgment process. We have not been privy to either the alleged June 14, 2006 or June 22, 2006 Resolution of Charges correspondence nor what consequences, if any, came about as a result therefrom. Further, there is no indication in the record as to the date when plaintiff was effectively terminated from employment.

fact to conclude that "(1) [plaintiff] compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." Rubinovitz v. Rogato, 60 F.3d 906, 910 (1st Cir. 1995) (citations and internal quotation marks omitted).

"A requirement for stating a valid disparate treatment claim under the Fourteenth Amendment is that the plaintiff make a plausible showing that he or she was treated differently from others similarly situated. A similarly situated person is one that is roughly equivalent to the plaintiff in all relevant respects." Estate of Bennett v. Wainwright, 548 F.3d 155, 166 (1st Cir. 2008) (internal citations and quotation marks omitted).

"In order to have a valid claim under § 1983, plaintiff[] must show that defendant's actions were the cause in fact of the alleged constitutional deprivation. It is not enough for plaintiff[] to show [defendant] may have used an impermissible... classification; there must be a causal link between this and the adverse employment action. On an alleged Equal Protection Clause violation, the plaintiff must show more than invidious intent. [He] must also demonstrate that the causal connection between the defendant's action and the plaintiff's injury is sufficiently direct." Sullivan v. City of Springfield, 561 F.3d 7, 14-15 (1st Cir. 2009) (internal citations, quotation marks and brackets omitted).

Plaintiff has failed to meet his burden regarding this particular claim. In an overly broad manner, he alleges violations to rights secured under the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution. However, apart from the total lack of information as to the acts or omissions of either of the two individual defendants necessary to establish the required causal nexus, plaintiff has failed to specify how he was treated differently from others similarly situated. There is nothing in either the pleading or in plaintiff's response to the summary judgment motion which indicates the type of classification which purportedly resulted in an adverse action. In other words, plaintiff has failed to compare his situation to that of other PR-PD employees and explain how this classification motivated a difference in treatment at work.

Accordingly, the equal protection claim asserted under § 1983 is hereby **DISMISSED**.

## C. **First Amendment - Retaliation**[12]

Retaliation for exercising rights protected under the First Amendment may be vindicated through § 1983. *See* Broderick v. Evans, 570 F.3d 68 (1st Cir. 2009); Welch v. Ciampa, 542 F.3d 927 (1st Cir. 2008); Rosado-Quiñones v. Toledo, 528 F.3d 1, 5 (1st Cir. 2008).

---

[12] Even though the complaint does not specifically mention the First Amendment as a source of plaintiff's demand for relief, there are sufficient retaliatory allegations in the pleading as to state such a cause of action. Additionally, both parties address this provision in their respective memoranda.

As part of his burden to establish a free speech claim, consonant with the standard set forth by the United States Supreme Court in Mt. Healthy Sch. Dist. Bd. Of Educ. v. Doyle, 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), "plaintiff must show that he engaged in constitutionally protected conduct and that this conduct was a substantial or motivating factor in the alleged adverse employment action... If the [p]laintiff meets his prima facie burden the defendant can prevail if it can establish it would have taken the same action regardless of plaintiff's... protected conduct." Welch, 542 F.3d at 936; Fabiano v. Hopkins, 352 F.3d 447, 453 (1st Cir. 2003).

Initially a determination must be made to ensure that the conduct at issue does fall within the ambit of the First Amendment. This entails the following inquiry:

(1) whether the speech involves a matter of public concern;

(2) whether, when balanced against each other, the First Amendment interests of the plaintiff and the public outweigh the government's interest in functioning efficiently; and (3) whether the protected speech was a substantial or motivating factor in the adverse action against the plaintiff.

Rosado-Quiñones v. Toledo, 528 F.3d 1, 5 (1st Cir. 2008).

Ordinarily, complaints regarding internal personnel matters within a government agency are not deemed matters of public concern. "[W]hen a public employee speaks not as a citizen upon matters of

public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." Rosado-Quiñones, 528 F.3d at 5-6 (citing Connick v. Myers, 461 U.S. 138, 147 , 103 S.Ct. 1684, 75 L.Ed.2d 798 (1983)). Indeed, "there is no absolute First Amendment right to file lawsuits." Rosado-Quiñones, 528 F.3d at 7.

However, lawsuits to uphold civil rights or statutory policy concerns under Title VII have been found to qualify for Constitutional protection. *Id*. Thus, we find that based on the circumstances present in this case, the complaint of sexual harassment based on rights protected under Title VII sufficiently meets the public interest requirement sufficient to meet plaintiff's burden.

"Turning to the question of who can be held liable for [the violation] we note that it is axiomatic that the liability of persons sued in their individual capacities under section 1983 must be gauged in terms of their own actions." Welch v. Ciampa, 542 F.3d at 936.

As previously discussed, there is no indication in the record as to ANGEL RIVERA having played any role in either of the allegedly retaliatory events charged by plaintiff. Hence, we conclude that plaintiff has failed to establish a prima facie case against this particular codefendant by failing to demonstrate that he was "personally and directly involved in the alleged violation of his

[First Amendment] rights." <u>Cepero-Rivera</u>, 414 F.3d at 130 (citation omitted).

Thus, the § 1983 claim asserted against ANGEL RIVERA based on a violation of plaintiff's First Amendment rights must be **DISMISSED.**

We must now ascertain whether there is evidence to connect GALO SEGARRA with the alleged deprivation of First Amendment rights as a result of the retaliatory events listed in the complaint. Plaintiff charges GALO SEGARRA with sabotaging the PR-PD investigatory process "by giving false declarations and meeting with his personnel so that they would lie in their declarations."[13]  For purposes of the summary judgment disposition currently before us, this connection - which has not been challenged by defendants - is deemed sufficient to meet the requisite causal relationship.

In this case defendants' sole argument addressing the legal sufficiency of the First Amendment cause of action is that based on the results of the sexual harassment investigation carried out by the PR-PD, there was ample cause to terminate plaintiff for misconduct. In other words, that the same action would have been taken against plaintiff absent his sexual harassment complaint.

However, as previously discussed, the adequacy of this investigation has been put at issue by plaintiff. There is sufficient evidence available in this case for a reasonable trier of fact to conclude that the administrative inquiry was infected with

---

[13]  Amended Complaint (docket No. 13) ¶ 17.

CIVIL NO. 07-1362 (RLA)                                    **Page 44**

---

retaliatory animus. Given the extant controversy over such a crucial piece of evidence, we find that the First Amendment claim against this codefendant cannot be disposed of via summary judgment.

Based on the foregoing, the request to dismiss the § 1983 claim based on First Amendment breach is **DENIED** as to GALO SEGARRA.

### D. **Due Process**

Without any particularized information plaintiff generally claims that his due process rights were violated.

The Due Process Clause provides that no state shall "deprive any person of life, liberty or property without due process of law." U.S. Const. amend. XIV, § 1.

In order to properly assert a procedural due process claim under § 1983, plaintiff must show that: (1) he had a property interest and (2) that defendants, acting under color of state law, deprived him of that property interest without providing him with a constitutionally adequate procedure. Ponte-Torres v. Univ. of P.R., 445 F.3d 50, 56 (1st Cir. 2006); Lacera v. Ferruzzi, 22 F.3d 344, 347 (1st Cir. 1994); Mumford Pharmacy v. City of East Providence, 970 F.2d 996, 999 (1st Cir. 1992); PAZ Properties v. Rodriguez, 928 F.2d 28, 30 (1st Cir. 1991). "Under the Due Process Clause of the Fourteenth Amendment, persons who possess a property interest... cannot be deprived of that interest without due process of law." Figueroa-Serrano v. Ramos-Alverio, 221 F.3d 1, 6 (1st Cir. 2000). Hence, it is only in situations where plaintiff has been able to establish a property

CIVIL NO. 07-1362 (RLA)                                          **Page 45**

right at stake that due process protection comes into play. *See*,
Redondo-Borges v. U.S. Dep't of Housing and Urban Dev., 421 F.3d 1,
7 (1st Cir. 2005) ("[f]or a claim to succeed, the plaintiffs must
identify a protected property or liberty interest.")

In order to ascertain the adequacy of the procedures available
to plaintiff "'it is necessary to ask what process the State
provided, and whether it was constitutionally adequate. This inquiry
would examine the procedural safeguards built into the statutory or
administrative procedure... effecting the deprivations, and any
remedies for erroneous deprivations provided by statute or tort
law.'" Lacera, 22 F.3d at 347 (*citing* Zinermon v. Burch, 494 U.S.
113, 126, 110 S.Ct. 975, 108 L.Ed. 100 (1990).

**1. Procedural Due Process**

"In its procedural aspect, due process ensures that government,
when dealing with private persons, will use fair procedures."
DePoutot v. Raffaelly, 424 F.3d 112, 118 (1st Cir. 2005). "Unlike
substantive due process, which is concerned primarily with why the
government deprives a person of life, liberty or property, procedural
due process is concerned with how the government deprives a person of
life, liberty or property. The fundamental requirement of due process
is the opportunity to be heard at a meaningful time and in a
meaningful manner." Paul H. Tobias, 2 Lit. Wrong. Discharge Claims
§ 7.11. *See i.e.*, Calderon-Garnier v. Rodriguez, 578 F.3d 33, 38 (1st

Cir. 2009) (addressing pre and post termination due process requirements).

In order to properly assert a procedural due process claim under § 1983, "[p]laintiffs must allege they have a property interest as defined by state law and, second, that the defendants, acting under color of state law, deprived them of that property interest without constitutionally adequate process." Mercado-Alicea v. P.R. Tourism Co., 396 F.3d 46, 53 (1st Cir. 2005) (citation, brackets and internal quotation marks omitted); Cosme-Rosado v. Serrano-Rodriguez, 360 F.3d 42, 46 (1st Cir. 2004); Lacera v. Ferruzzi, 22 F.3d 344, 347 (1st Cir. 1994); Mumford Pharmacy v. City of East Providence, 970 F.2d 996, 999 (1st Cir. 1992); PAZ Properties v. Rodriguez, 928 F.2d 28, 30 (1st Cir. 1991).

"An essential principle of due process is that a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case." Cleveland v. Bd. of Educ. v. Loudermill, 470 U.S. 532, 542, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985) (citation and internal quotation marks omitted). Meaningful due process includes "notice and an opportunity to be heard." Cosme-Rosado, 360 F.3d at 46 (citation omitted).

As part of his due process guarantee, a career employee "is entitled to notice and a meaningful opportunity to respond prior to termination. Before a career employee is discharged, he is entitled to oral or written notice of the charges against him, an explanation

of the employer's evidence, and an opportunity to present his side of the story. Cepero-Rivera v. Fagundo, 414 F.3d 124, 134 (1st Cir. 2005) (citation and internal quotation marks omitted). "A tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employers' evidence, and an opportunity to present his side of the story." Loudermill, 470 U.S. at 546.

In Torres-Rosado v. Rotger-Sabat, 335 F.3d 1, 10-11 (1st Cir. 2003) the court found that plaintiff had been provided sufficient notice of the evidence to be used at the hearing in that she was given a letter spelling out in detail the allegations and findings prompting her termination. The court ruled that this "explanation of the employer's evidence which, combined with notice and an opportunity to respond, satisfied the requirements of procedural due process." (Citation and internal quotation marks omitted).

In the case at bar, plaintiff has failed to allege, much less present evidence indicative of a lack of or inadequate process regarding his retaliation claims. All we have before us are allegations that three letters of charges were issued. Of these, we do not know the procedural details or the outcome of the first two. As to the last one, it was issued following an investigation where plaintiff took part and there was a subsequent appeal.

Faced with this scenario, we find that no legal grounds exist to support a procedural due process claim inasmuch as the record is totally devoid of evidence showing that no adequate procedures were

1   CIVIL NO. 07-1362 (RLA)                                    **Page 48**

2

3   available to address plaintiff's grievances. Thus, we must conclude

4   that the procedural due process claim is not legally sufficient.

5       Additionally, there is no evidence suggesting that either of the

6   two individual defendants in this action actively participated or

7   were responsible for any deficiencies in the alleged due process

8   breach as mandated for a valid § 1983 claim.

9       Accordingly, the procedural due process claim asserted under

    § 1983 is hereby **DISMISSED**.
10
        **2. Substantive Due Process**
11
        Even though the due process clause refers only to procedural
12
    safeguards, it is settled that it also "contains a substantive
13
    component that bars certain arbitrary, wrongful government actions
14
    'regardless of the fairness of the procedures used to implement
15
    them.'"  Zinermon v. Burch, 494 U.S. at 125 (*citing* Daniels v.
16
    Williams, 474 U.S. 327, 331, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986);
17
    County of Sacramento v. Lewis, 523 U.S. 833, 840, 118 S.Ct. 1708, 140
18
    L.Ed.2d 1043 (1998); Centro Medico del Turabo, Inc. v. Feliciano de
19
    Melecio, 406 F.3d 1, 8 (1st Cir. 2005).
20
        Procedural due process requires that a proceeding which results
21
    in a deprivation of property be a fair one whereas substantive due
22
    process guards against arbitrary and capricious government actions.
23
    Lacera, 22 F.3d at 347.
24
        "In its substantive aspect, due process safeguards individuals
25
    against certain offensive government actions, notwithstanding that
26

facially fair procedures were used to implement them." DePoutot, 424 F.3d at 118. "The doctrine of substantive due process does not protect individuals from all governmental actions that infringe liberty or injure property in violation of some law. Rather, substantive due process prevents governmental power from being used for purposes of oppression or abuse of government power that shocks the conscience, or an action that is legally irrational in that it is not sufficiently keyed to any legitimate state interests." Medeiros v. Vincent, 431 F.3d 25, 33 (1st Cir. 2005) (citations and internal marks omitted); SFW Arecibo, Ltd. v. Rodriguez, 415 F.3d 135, 141 (1st Cir. 2005).

"The substantive due process guarantee functions to protect individuals from particularly offensive actions on the part of government officials, even when the government employs facially neutral procedures in carrying out those actions." Pagan v. Calderon, 448 F.3d 16, 32 (1st Cir. 2006).

The courts have consistently held that substantive due process claims are limited to extreme cases and "the threshold for establishing the requisite 'abuse of government power' is a high one indeed." Lacera, 22 F.3d at 350 (citing Nestor Colón-Medina & Sucrs., Inc. v. Custodio, 964 F.2d 32, 45 (1st Cir. 1992)). "A viable substantive due process claim requires proof that the state action was in and of itself egregiously unacceptable, outrageous, or conscience-shocking". Lacera, 22 F.3d at 347 (internal quotation

marks and citation omitted); <u>Cruz-Erazo v. Rivera-Montanez</u>, 212 F.3d 617, 622 (1st Cir. 2000). *See also*, <u>Nestor Colón-Medina</u>, 964 F.2d at 45 (substantive due process mechanism limited to "truly horrendous situations").

"[T]he question of whether the challenged conduct shocks the contemporary conscience is a threshold matter that must be resolved before a constitutional right to be free from such conduct can be recognized." <u>DePoutot</u>, 424 F.3d at 118.

"First, we must determine whether the official's conduct shocks the conscience. Only if we answer that question affirmatively can we examine what, if any, constitutional right may have been violated by the conscience-shocking conduct and identify the level of protection afforded to that right by the Due Process Clause." <u>DePoutot</u>, 424 F.3d at 118. "To meet [his] burden on a substantive due process cause of action, the [plaintiff] must present a well-pleaded claim that a state actor deprived [him] of a recognized life, liberty, or property interest, and that he did so through conscience-shocking behavior." <u>Estate of Bennett</u>, 548 F.3d at 162. A "claim is cognizable as a violation of substantive due process 'only when it is so extreme and egregious as to shock the contemporary conscience.'" <u>McConkie v. Nichols</u>, 446 F.3d 258, 260 (1st Cir. 2006) (*citing* <u>DePoutot</u>, 424 F.3d at 118.)

In describing which action "shocks the conscience" for substantive due process purposes, "[i]t has been said, for instance,

that substantive due process protects individuals against state actions which are 'arbitrary and capricious,' or those that run counter to 'the concept of ordered liberty,' or those which, in context, appear 'shocking or violative of universal standards of decency.'" Cruz-Erazo, 212 F.3d at 622 (*citing* Amsden v. Moran, 904 F.2d 748, 753-54 (1st Cir. 1990)). "In order to shock the conscience, the conduct must be 'truly outrageous, uncivilized, and intolerable.'" McConkie, 446 F.3d at 260 (*citing* Hasenfus v. LaJeunesse, 175 F.3d 68, 72 (1st Cir. 1999)).

Deprivations resulting from negligent acts or omissions on the part of state officers are not actionable under due process provisions. Davidson v. Cannon, 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986); Ramos-Piñero v. Puerto Rico, 453 F.3d 48, 54 (1st Cir. 2006). *See i.e.*, Pagan, 448 F.3d at 32 (substantive due process clause should not "serve as a means of constitutionalizing tort law"); McConkie, 446 F.3d at 261 ("negligent conduct, simpliciter, is categorically insufficient to shock the conscience"). Nor is substantive due process protection triggered by merely unsound or erroneous government decisions. Its use is limited to those specific instances involving egregious abuse of governmental power which the courts find shocking. Collins v. City of Harker Heights, 502 U.S. 115, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992).

Additionally, "violations of state law - even where arbitrary, capricious, or undertaken in bad faith - do not, without more, give

rise to a denial of substantive due process". <u>Coyne v. City of Somerville</u>, 972 F.2d 440, 444 (1st Cir. 1992). "The doctrine of substantive due process does not protect individuals from all governmental actions that infringe liberty or injure property in violation of some law. Rather, substantive due process prevents governmental power from being used for purposes of oppression, or abuse of government power that shocks the conscience, or action that is legally irrational in that it is not sufficiently keyed to any legitimate state interests." <u>PAZ Properties</u>, 928 F.2d at 31-2 (citations and internal brackets and quotation marks omitted).

The very nature of this constitutional protection has caused that substantive due process protection be used sparingly. "Courts should guard against unduly expanding the concept of substantive due process 'because guideposts for responsible decisionmaking in this unchartered area are scarce and open ended'". <u>S. County Sand & Gravel Co., Inc. v. Town of South Kingstown</u>, 160 F.3d 834, 835 (1st Cir. 1998) (<i>citing</i> <u>Collins v. City of Harker Heights</u>, 503 U.S. at 125). Substantive due process, as a theory for constitutional redress, has in the past fifty years been disfavored, in part because of its virtually standardless reach." <u>Nestor Colon-Medina</u>, 964 F.2d at 45; <u>Lacera</u>, 22 F.3d at 350.

Further, in situations where plaintiffs are protected from undue interference from state actions by specific constitutional guarantees "they must assert their claims under that particular constitutional

rubric instead of invoking the more generalized notion of substantive due process." S. County Sand & Gravel, 160 F.3d at 835. "Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." Lewis, 523 U.S. at 842 (*citing* Albright v. Oliver, 510 U.S. 266, 273, 114 S.Ct. 807, 127 L.Ed 2d 114 (1994)). *See, i.e.*, Ramirez v. Arlequin, 447 F.3d 19, 25 (1st Cir. 2006) ("Where the plaintiffs have stated a viable First Amendment claim for the very same conduct, we have declined to enter the unchartered thicket of substantive due process to find an avenue for relief.") (citation and internal quotation marks omitted).

We find that plaintiff's allegations do not fit under the substantive due process rubric either. The circumstances depicted by plaintiff as purportedly egregious pertain solely to the alleged sexually harassing conduct of ANGEL RIVERA and to GALO SEGARRA's alleged condonation and incitement thereof. There are no specific facts raising to the extreme level of conduct required attributable to either of the individual defendants regarding retaliatory conduct.[14] Accordingly, the claim for substantive due process violation is hereby **DISMISSED**.

---

[14] Additionally, plaintiff already has available First Amendment protection as to GALO SEGARRA.

CIVIL NO. 07-1362 (RLA)                                          **Page 54**

---

## VIII. ELEVENTH AMENDMENT AND LOCAL CLAIMS

Plaintiff concedes that the COMMONWEALTH OF PUERTO RICO and the PR-PD are shielded by the Eleventh Amendment from liability regarding the supplemental claims. Further, as previously noted, no such claims are asserted against the local government in these proceedings.[15] Thus, defendants' request in this regard is **MOOT**.

The local claims asserted under Law 17, Law 69 and torts,[16] however, subsist as to the individual defendants.[17]

## IX. CONCLUSION

Based on the foregoing, defendants' Motion for Summary Judgment (docket No. **51**)[18] is hereby disposed of as follows:

- The Title VII retaliation claim based on the first Letter of Resolution of Charges due to the elevator incident is hereby **DISMISSED**.

- The Title VII retaliatory harassment/hostile environment claim is hereby **DISMISSED**.

---

[15] See Order Denying Motion to Dismiss filed by the Commonwealth of Puerto Rico (docket No. 39).

[16] Even though the parties mention Law No. 100 of June 30, 1959, P.R. Laws Ann. tit. 29, § 146 (2002) in their respective memoranda, we have not been able to find a reference to this statute in the Amended Complaint.

[17] No arguments were presented in the summary judgment request addressed at the viability of the supplemental claims asserted against the two individual defendants.

[18] See Opposition (docket No. **62**).

**CIVIL NO. 07-1362 (RLA)**                                              **Page 55**

-     Plaintiff's § 1983 claims asserted against codefendant ANGEL RIVERA based on violations of Title VII are **DISMISSED.**

-     Plaintiff's § 1983 equal protection claims are **DISMISSED.**

-     Plaintiff's § 1983 claims asserted against codefendant ANGEL RIVERA based on First Amendment violations are **DISMISSED.**

-     Plaintiff's § 1983 due process claims are **DISMISSED.**

Judgment shall be entered accordingly.[19]

IT IS SO ORDERED.

San Juan, Puerto Rico, this 14th day of October, 2009.


                                    S/Raymond L. Acosta
                                     RAYMOND L. ACOSTA
                                United States District Judge

---

     [19]    Based on today's ruling, only the following claims remain outstanding in this action: (1) Title VII retaliation claim based on: the second Letter of Resolution of Charges due to the domestic violence incident, the third Letter of Resolution of Charges and plaintiff's termination, (2) § 1983 First Amendment retaliation claim against GALO SEGARRA and (3) local claims under Law 17, Law 69 and torts against GALO SEGARRA and ANGEL RIVERA.