IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| EDGARDO L. BIBILONI-DEL-VALLE,<br><br>     Plaintiff<br><br>          v.<br><br>COMMONWEALTH OF PUERTO RICO, et al.,<br><br>     Defendants | CIVIL NO.  07-1362 (JP) |

**FINDINGS OF FACT, CONCLUSIONS OF LAW,**
**ORDER FOR THE ENTRY OF JUDGMENT AS A MATTER OF LAW**

Before this Court is Defendants Commonwealth of Puerto Rico, the Puerto Rico Police Department, and Galo Segarra Alonso's renewed motion for the entry of judgment as a matter of law, to alter or amend the judgment, for remittitur, and for a new trial. (**No. 144**). Also before the Court is Plaintiff's opposition thereto[1] (No. 145). For the reasons stated herein, the Court **GRANTS** Defendants' motion for judgment as a matter of law.[2]

---

1. The Court has done its best to understand Plaintiff's incoherent opposition.

2. On June 24, 2011, Plaintiff filed another motion (**No. 146**) entitled, "Motion Requesting Order Under Rules 59(a) and 59(e), if the Verdict is Set Aside by the United States Courts Due to Defendants [sic] Rule 50 and Rule 59." This motion, which is even more incoherent than Plaintiff's opposition, appears to be a supplement to his opposition. As such, the Court hereby **STRIKES** Plaintiff's attempt to supplement his previously filed opposition without leave of Court.

CIVIL NO. 07-1362 (JP)            -2-

I.   **INTRODUCTION AND PROCEDURAL BACKGROUND**

Plaintiff Edgardo Bibiloni Del-Valle ("Bibiloni") was employed as a janitor by the Puerto Rico Police Department ("PR-PD"). On April 30, 2007, he filed this complaint against Defendants Commonwealth of Puerto Rico, the PR-PD, and Galo Segarra Alonso ("Segarra"), his former supervisor at the PR-PD, alleging that Defendants retaliated against him for filing a complaint of sexual harassment before the Equal Employment Opportunity Commission ("EEOC").[3] He later filed an amended complaint on November 15, 2007. He argues that Defendants dismissed him from his employment with the PR-PD in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-3(a) ("Title VII"). Plaintiff also asserts claims under 42 U.S.C. § 1983 ("Section 1983") for violation of the equal protection and due process clauses of the United States Constitution, and under Puerto Rican state laws.

By way of background, Plaintiff Bibiloni alleged that he was sexually harassed by a male coworker, Angel Rivera Gonzalez ("Rivera"), on numerous occasions. Specifically, Plaintiff alleged that Rivera would touch him inappropriately and make sexual comments to Plaintiff. Plaintiff alleged that Segarra, Plaintiff's former supervisor, knew about the sexual harassment and did nothing.

---

3.   The Court notes that Plaintiff also named as Defendants Pedro Toledo-Davila, Ramon A. Ortega-Rodriguez, Vilma Fernandez-Bermudez, Carmen T. Lugo-Semolino, Angel Rivera Gonzalez, and Francisco Quinones-Rivera. These Defendants were dismissed from the case prior to the trial.

CIVIL NO. 07-1362 (JP)          -3-

Plaintiff filed a sexual harassment complaint with the PR-PD on October 25, 2005, and with the EEOC on December 6, 2005.[4] Plaintiff alleges that he was terminated from his employment in October 2006. In November 2006, Plaintiff filed his claim of retaliation at the EEOC.

A jury trial was held in the instant case commencing on May 24, 2011. At the close of Plaintiff's case, Defendant moved for judgment as a matter of law. The Court reserved its ruling on the motion at that time. On May 26, 2011, the trial concluded, and the jury returned a verdict in favor of Plaintiff, and awarded Plaintiff $500,000.00. Following trial, Defendants renewed their motion for judgment as a matter of law, and counsels for Plaintiff and Defendants orally presented their arguments for the Court. Subsequently, Defendant filed the instant motion, and Plaintiff filed an opposition.

Defendants move the Court to reject the jury award in favor of Plaintiff arguing that Plaintiff has not presented sufficient evidence to support his retaliation claim and damages award. Plaintiff counters that he presented sufficient evidence at trial to support the jury's verdict, and thus, the jury's verdict should stand. Defendants move the Court for judgment as a matter of law, to alter or amend the judgment, for remittitur, and, in the alternative,

---

4.   Plaintiff testified that he did not pursue this claim during the time period permitted because he could not afford an attorney.

CIVIL NO. 07-1362 (JP)          -4-

for a new trial.

## II. **MOTION FOR JUDGMENT AS A MATTER OF LAW**

### A. **Legal Standard for a Rule 50 Motion**

Under Rule 50, a trial court may grant judgment as a matter of law when "the jury [does] not have a legally sufficient evidentiary basis for its verdict." Jennings v. Jones, 587 F.3d 430, 436 (1st Cir. 2009) (internal quotations omitted). A judgment notwithstanding the verdict should be granted if, examining the evidence in the light most favorable to the non-moving party, the Court finds that the facts and reasonable inferences lead to only one conclusion – that there is a total failure of evidence to prove the non-moving party's case. Acevedo-García v. Monroig, 351 F.3d 547, 565 (1st Cir. 2003). "Courts may only grant a judgment contravening a jury's determination when the evidence points so strongly and overwhelmingly in favor of the moving party that no reasonable jury could have returned a verdict adverse to that party." Monteagudo v. Asociacion de Empleados del Estado Libre Asociado de Puerto Rico, 554 F.3d 164, 170 (1st Cir. 2009).

### B. **Plaintiff's Title VII Retaliation Claim**

Defendants argue that the evidence presented at trial was insufficient to support a finding of liability on Plaintiff's retaliation claim, and that, even assuming Plaintiff made a *prima facie* case of retaliation, Plaintiff failed to provide evidence to

CIVIL NO. 07-1362 (JP)          -5-

show that the three non-retaliatory reasons offered by Defendants for dismissing Plaintiff were pretextual.

> Title VII's anti-retaliation provision provides as follows:
>
> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment . . . to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a). In order to establish a *prima facie* case of retaliation, a plaintiff must show that he: (1) engaged in a protected activity; (2) experienced some materially adverse action; and (3) the adverse action was causally linked to his protected activity. Dixon v. Int'l Bhd. Of Police Officers, 504 F.3d 73, 91 (1st Cir. 2007); McDonough v. City of Quincy, 452 F.3d 8, 17 (1st Cir. 2006). Protected conduct includes not only the filing of administrative complaints, but also complaining to one's supervisors. Benoit v. Technical Mfg. Corp., 331 F.3d 166, 175 (1st Cir. 2003). An adverse employment action must materially change the conditions of the plaintiff's employment. Gu v. Boston Police Dep't, 312 F.3d 6, 14 (1st Cir. 2002) (citing Blackie v. Maine, 75 F.3d 716, 725 (1st Cir. 1996)).

Once the plaintiff has made a *prima facie* showing of retaliation, the defendant must articulate a legitimate, non-

CIVIL NO. 07-1362 (JP)             -6-

retaliatory reason for its employment decision. Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 26 (1st Cir. 2004); McDonough, 452 F.3d at 17 (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)). If the defendant meets this burden, the plaintiff must show that the proffered legitimate reason is in fact a pretext and that the job action was the result of the defendant's retaliatory animus. Calero-Cerezo, 355 F.3d at 26.

In determining pretext, there is "no mechanical formula." McDonough, 452 F.3d at 18 (citing Che v. Mass. Bay Transp. Auth., 342 F.3d 31, 39 (1st Cir. 2003)). Pretext can be proven in many ways. Id. "One way is for the plaintiff to show that the employer gave 'different and arguably inconsistent explanations' for taking the adverse employment action." Id. (citing Dominguez-Cruz v. Suttle Caribe, Inc., 202 F.3d 424, 432 (1st Cir. 2000)).

At trial, Plaintiff's evidence established that he engaged in protected conduct when he filed a sexual harassment complaint with the PR-PD and with the EEOC. Plaintiff also established that he experienced a materially adverse employment action when he was terminated from his employment. Despite establishing the first two elements for a *prima facie* case of retaliation, Plaintiff falters on the last element. Viewing the evidence in the light most favorable to Plaintiff, the Court finds that Plaintiff's evidence fails to show a causal connection between the protected activity and the adverse employment action.

CIVIL NO. 07-1362 (JP)          -7-

    To establish a causal link, Plaintiff's theory was that the PR-PD knew he filed a sexual harassment complaint with the EEOC and knew about the investigation report when the PR-PD dismissed him and that the PR-PD dismissed him because he named Rivera and Segarra in his complaint when Rivera's father was a Lieutenant in the PR-PD and Segarra's father was a Commander. However, during the trial, the evidence presented by Plaintiff was not sufficient to establish a causal link between Plaintiff filing his sexual harassment complaint and his subsequent dismissal from the PR-PD.

    Plaintiff presented evidence that in late 2005 he filed a complaint of sexual harassment with the PR-PD and the EEOC against the PR-PD, Rivera and Segarra, among others. Plaintiff testified that Rivera would touch him inappropriately, invite him to participate in sexual relations, offer him money in exchange for sexual relations, kiss Plaintiff on his back, as well as make other sexual comments to Plaintiff. Plaintiff stated that Segarra was his supervisor at the time and was aware of the harassment and did nothing. Plaintiff also testified that Rivera's father was a Lieutenant in the PR-PD and Segarra's father was a Commander. Plaintiff testified that, upon filing his sexual harassment complaint, he requested an investigation into those claims. He testified that he provided the investigator with the names of several witnesses to the alleged sexual harassment.

    Plaintiff testified that on June 14, 2006, June 22, 2006 and in November 2006 he received letters from the PR-PD stating that it

CIVIL NO. 07-1362 (JP)          -8-

intended to dismiss him from his employment. Plaintiff testified that one letter referred to an incident in 1999 where Plaintiff was accused of domestic violence, and another letter referred to his conduct showing his coworker, Margarita Figueroa ("Figueroa"), a pornographic picture on his cell phone.

    Plaintiff's first witness, Yahaira Perez Roman ("Perez"), was the Human Resources Manager for the PR-PD. She testified that on October 14, 2005, prior to Plaintiff filing his sexual harassment complaint, she received an investigation report of an alleged sexual harassment incident involving Plaintiff and a female coworker, Figueroa. The report, which was from the PR-PD's Internal Affairs auxiliary superintendent, indicated that Plaintiff was investigated for showing his female coworker a pornographic photograph, a photo of a penis, on his cell phone. Although Figueroa did not want to file a formal complaint against Plaintiff, Perez testified that because of the PR-PD's policy of zero tolerance for sexual harassment the PR-PD was required to continue with the investigation. Perez testified that once a case investigation is received the protocol is to refer the case to the Deputy Superintendent for Public Integrity, which it was in this case. Finally, Perez testified that, based on this incident and the results of the investigation, the Human Resources Department recommended that Plaintiff be dismissed from his employment.

CIVIL NO. 07-1362 (JP)          -9-

Defendants' witness, Miguel Rivera Claudio ("Rivera Claudio"), who has been a police agent with the PR-PD for approximately ten years, testified that he conducted the investigation into the incident involving Figueroa, that he confirmed that Plaintiff did in fact show Figueroa a pornographic picture on his cell phone, and that Figueroa stated during the investigation that she had felt disrespected by the incident. However, she did not want to file a sexual harassment complaint. Rivera Claudio testified that as part of the investigation Plaintiff was asked to provide a statement but he refused. In connection with that incident, Rivera Claudio prepared a report dated October 5, 2005. See Defs.' Ex. 3. The report indicates that the incident with Figueroa occurred at the end of June 2005 and that the investigator interviewed Figueroa on September 30, 2005 almost a month before Plaintiff filed his sexual harassment complaint.

In addition, Rivera Claudio testified that prior to the Figueroa incident he was asked to observe Plaintiff because the PR-PD received an anonymous call indicating that Plaintiff was frequently abandoning his work place during work hours. Rivera Claudio stated that an investigation was initiated to corroborate these allegations. As part of the investigation, he conducted a surveillance of Plaintiff and observed Plaintiff on several occasions leaving the police department and visiting shopping centers, such as Plaza Las Americas, and visiting other locations unrelated to his employment and to take care

CIVIL NO. 07-1362 (JP)          -10-

of personal matters. Rivera Claudio testified that he documented what he observed and submitted his report for further administrative investigations.

When asked about the investigation into him abandoning his work, Plaintiff did not deny leaving work, but stated that he requested permission from Segarra or the secretary. As to the Figueroa incident, Plaintiff also did not deny that this incident occurred. Instead, he stated that because Figueroa did not want to file a complaint that it was not sexual harassment. Plaintiff conceded that as to the Figueroa incident he was provided the opportunity to give a statement, but he chose not to do so.

To support his claim that he was sexually harassed by Rivera, Plaintiff presented the testimony of his former coworker Miguel Alicea Bruno ("Alicea Bruno"), who worked as a maintenance technician in 2005 and 2006 with the PR-PD, and the testimony of his two sons, Christian Bibiloni Cruz ("Bibiloni Cruz") and Edgardo Luis Bibiloni Cruz, Jr., who were minors in 2005.

Alicea Bruno testified that he once saw Rivera touch Plaintiff inappropriately while they were all in the bathroom stall; however, he never reported the incident. When questioned about whether he recalled any other incident of a similar nature between Rivera and Plaintiff, Alicea Bruno could not recall a single incident. Even after being shown his previously prepared sworn statement to refresh his recollection, Alicea Bruno could not recall details of any of the

CIVIL NO. 07-1362 (JP)           -11-

incidents without reading directly from the sworn statement. He admitted that Plaintiff gave all the details contained in his sworn statement to the notary public. He also conceded that he took no part in preparing the statement, but simply signed the document. Alicea Bruno testified that he was dismissed in 2008 from the PR-PD and was reinstated in 2010.

Plaintiff's son, Christian Bibiloni Cruz, who was 13 to 14 years old in 2005 testified that on a visit to his father's work in 2005 he saw Rivera touching his father on the chest and that he heard Defendant Segarra tell Rivera to be careful with Plaintiff. He also testified as to sexual comments he heard Rivera make to his father. Another of Plaintiff's sons, Edgardo Luis Bibiloni Cruz, Jr. testified that he was around 15 years old in 2005, that he visited his father's work place and saw Segarra and heard him make a comment that Rivera should not get too close to Plaintiff because he has five children. He also testified that he heard Rivera state that Plaintiff was cute and saw Rivera touch his father.

As to the investigation into Plaintiff's sexual harassment complaint, Defendants presented the testimony of Juan Ruiz Acevedo ("Ruiz"), a lieutenant with the PR-PD for over seventeen years. In 2005, Ruiz worked for the PR-PD's Bureau of Domestic Violence and Sexual Harassment and was assigned to investigate Plaintiff's claim that he was sexually harassed by Rivera. Ruiz testified that the investigation began because Plaintiff requested it. As part of the

CIVIL NO. 07-1362 (JP)            -12-

investigation, Ruiz interviewed Plaintiff, Rivera, and witnesses identified by Plaintiff who allegedly saw the sexual harassment. In addition, Ruiz interviewed approximately ten other PR-PD employees.

According to Ruiz, none of the people he interviewed, including those identified by Plaintiff, supported Plaintiff's sexual harassment claims. Indeed, all of the witnesses informed the investigator that Rivera was the victim of Plaintiff and Alicea Bruno's harassment. Witnesses stated that Rivera is a deaf mute and that Alicea Bruno and Plaintiff would mock him, make him buy them food, force him to throw out their trash and give them money from Rivera's personal debit account, make sexual comments to Rivera, and threaten to perform sexual acts on him. According to the witnesses' statements, Plaintiff would show pornographic pictures, including nude pictures of himself, to Rivera and would show other coworkers pornographic pictures on his cell phone. Witnesses also informed Ruiz that Alicea Bruno and Plaintiff would view pornographic movies at work. Ruiz's findings are documented in his report dated March 2, 2006. See Defs.' Ex. 1.

Ruiz testified that to communicate with coworkers Rivera used hand gestures and read lips, and that he needed two translators to assist with interviewing Rivera because he could not speak. Ruiz stated that numerous witnesses described Rivera as a humble, unintelligent man, who was mocked and taken advantage of by Plaintiff. Ruiz also testified that when he interviewed Alicea Bruno

CIVIL NO. 07-1362 (JP)           -13-

as to Plaintiff's claims of sexual harassment, Alicea Bruno could not recall any of the incidents without reading from a sworn statement he brought to the interview. As to the 1999 domestic violence incident, Ruiz testified that he learned about the 1999 domestic violence incident and that Plaintiff pled guilty to domestic violence during the investigation into Plaintiff's sexual harassment complaint. The investigation began in October 2005 and concluded in March 2006.

Upon concluding the investigation, Rivera recommended that Plaintiff be dismissed from the PR-PD. He stated that he recommended Plaintiff's termination because Plaintiff's conduct, discovered during the investigation, was "too horrendous." In addition, based on the findings from the investigation, he recommended that Segarra be suspended for ten days without salary, that Alicea Bruno also be dismissed, and that Rivera receive counseling.

Plaintiff admitted that with regard to the domestic violence incident, where he was accused of punching his then wife, he pled guilty. He testified that filed an independent complaint with the Puerto Rico Labor Department, challenging the PR-PD's decision to dismiss him based on this incident because it occurred seven years before. Plaintiff was given a hearing and given the opportunity to present evidence but his dismissal was upheld. See Defs.' Ex. 8. Plaintiff challenged the decision a second time but once again the PR-PD's decision to dismiss Plaintiff on the basis of this 1999

CIVIL NO. 07-1362 (JP)          -14-

domestic violence incident was upheld finding that Plaintiff's conduct was in violation of certain PR-PD personnel regulations. See Defs.' Ex. 8.

   Notwithstanding that Plaintiff presented evidence showing that prior to his dismissal he filed a sexual harassment complaint, this chronological proximity does not alone establish causation. Wright v. CompUSA, Inc., 352 F.3d 472, 478 (1st Cir. 2003)(noting that "chronological proximity does not by itself establish causality, particularly if '[t]he larger picture undercuts any claim of causation'")(quoting Soileau v. Guilford of Maine, Inc., 105 F.3d 12, 16 (1st Cir. 1997). In this case, Plaintiff cannot establish a causal link between his termination and the filing of his sexual harassment complaint based only on the fact that his termination took place at some point after he filed the sexual harassment complaint and that the PR-PD had knowledge of and investigated his sexual harassment complaint. Plaintiff's claim of retaliation is severely undercut when his termination is placed against the background of Plaintiff showing pornographic pictures to coworkers, his documented absences from work to attend to personal matters, and the results of the investigation where numerous witnesses contradicted Plaintiff's claims of sexual harassment and stated that he was the one harassing Rivera. Malone v. Lockheed Martin Corp., 610 F.3d 16, 24 (1st Cir. 2010)(finding that "[a]gainst the background of [the employee's] unscheduled absences over a period of more than two years" a causal link between

CIVIL NO. 07-1362 (JP)          -15-

the alleged protected activity and Plaintiff's demotion "amounts to nothing more than speculation, based solely on the fact that the [demotion] happened at some point *after* the [alleged protected activity]").

Plaintiff presented no evidence, aside from his own testimony, to support his theory that he was retaliated against because he named Rivera and Segarra in his complaint when Rivera's father was a Lieutenant in the PR-PD and Segarra's father was a Commander. Plaintiff is not entitled to inferences based on speculation. See Malone, 610 F.3d at 23. The evidence showed that Plaintiff was dismissed after the PR-PD conducted a thorough investigation and almost a year after he filed his sexual harassment complaint. In considering the evidence presented at trial in the light most favorable to Plaintiff, the Court finds that Plaintiff has failed to present sufficient evidence to support a *prima facie* case of retaliation.

Even assuming that Plaintiff established a *prima facie* case of retaliation, Plaintiff has not met his burden of showing that the reasons proffered by Defendant for Plaintiff's termination were pretextual. At trial, Defendants articulated three legitimate, non-retaliatory reasons for Plaintiff's dismissal. Defendants stated that Plaintiff's dismissal was based on: 1) the 2005 cellular phone incident, where Plaintiff showed his female coworker, Figueroa, a pornographic picture on his cell phone; 2) the 1999 domestic violence

CIVIL NO. 07-1362 (JP)          -16-

incident, which was discovered during the 2005-2006 investigation, where Plaintiff pled guilty to domestic violence; and 3) the investigation report into Plaintiff's complaint, which concluded based on statements by multiple witnesses that Plaintiff and Alicea Bruno were harassing Rivera.

With regard to the Figueroa incident, Plaintiff did not deny that this incident took place, but instead argued that because Figueroa never filed a sexual harassment complaint against Plaintiff she was not sexually harassed. Nevertheless, Defendants presented evidence that the PR-PD has a zero tolerance policy for sexual harassment and that because of this policy it conducted an investigation of the incident. Defendants also presented evidence that this incident and the related investigation occurred before Plaintiff filed his sexual harassment complaint and that based on this incident the dismissal of Plaintiff was recommended. Thus, Plaintiff has not met his burden of showing that this reason was pretextual.

Plaintiff argued that the 1999 domestic violence incident was pretextual because it occurred seven years prior to his dismissal. However, Defendants presented evidence that this incident and that Plaintiff pled guilty were not discovered until the investigation into Plaintiff's sexual harassment claim. Defendants also presented evidence that the incident and Plaintiff's conduct violated PR-PD regulations. Although dismissing Plaintiff for the 1999 domestic

CIVIL NO. 07-1362 (JP)        -17-

violence incident may seem "unfair" because it occurred seven years prior, the First Circuit has explicitly stated, "Title VII was not designed to transform courts into 'super personnel departments, assessing the merits-or even the rationality of employers' nondiscriminatory business decisions." Feliciano de la Cruz v. El Conquistador Resort & County Club, 218 F.3d 1, 8 (1st Cir. 2000)(quoting Mesnick v. General Elec. Co., 950 F.2d 816, 825 (1st Cir.1991). Accordingly, Plaintiff has not met his burden of showing that this reason was pretextual.

The third non-retaliatory reason articulated by Defendants for dismissing Plaintiff was the investigation report, which concluded that Rivera was the victim of Plaintiff's sexual harassment. According to the report, numerous witnesses, including those identified by Plaintiff, contradicted Plaintiff's sexual harassment claim. Witnesses provided statements that Plaintiff and Alicea Bruno had been harassing Rivera, mocking his disabilities, showing him and other coworkers pornographic pictures, and taking advantage of Rivera, who was deaf and mute.

In determining whether this reason was pretextual, the issue is whether Defendant PR-PD based its decision to terminate Plaintiff on the investigation report as it claims. See Mulero-Rodriguez v. Ponte, Inc., 98 F.3d 670, 674 (1st Cir. 1996) (explaining that "in weighing whether [Plaintiffs] have presented enough evidence for a reasonable factfinder to deem the cited reasons pretextual, we remember that the

CIVIL NO. 07-1362 (JP)          -18-

issue is not whether [Defendant's] reasons to fire [Plaintiff] were real, but merely whether the decisionmakers [...] believed them to be real") (citing <u>Woodman v. Haemonetics Corp.</u>, 51 F.3d 1087, 1093 (1st Cir.1995)). While Plaintiff attempts to attack the conclusions and veracity of the investigation report, Plaintiff presented no support for these claims and presented no evidence showing that Defendants did not believe the conclusions of the report. Plaintiff testified that Rivera's father was a Lieutenant in the PR-PD and Segarra's father was a Commander. Nevertheless, Plaintiff provided no factual support to show that Defendants retaliated against him and fabricated the investigation report because of any favoritism of Rivera and Segarra. Defendant's evidence showed that as per the recommendation of the investigation report, Segarra was suspended without pay for ten days for his failure to properly supervise Plaintiff and prevent the harassment of Rivera. The report also recommended the dismissal of Plaintiff and Alicea Bruno and recommended counseling for Rivera. As such, Plaintiff has not met his burden of showing that this reason was pretextual.

The Court finds that based on the evidence in the record no reasonable juror could conclude that the three reasons provided by Defendants were pretextual.

**C.   Plaintiff's Section 1983 Claims**

Plaintiff argues that he has presented sufficient evidence to establish a Section 1983 First Amendment claim. The Court finds that

CIVIL NO. 07-1362 (JP)          -19-

given that Plaintiff failed to present sufficient evidence to show retaliation under Title VII, Plaintiff has undoubtedly failed to meet his burden of proving retaliation under Section 1983. One of the requirements for a Section 1983 retaliation case is that the employee "must meet the 'burden of producing sufficient direct or circumstantial evidence from which a jury reasonably may infer that his constitutionally protected conduct . . . was a **substantial or motivating** factor behind his dismissal'." Diaz-Bigio v. Santini, 2011 WL 2557003, at *6  (1st Cir. June 29, 2011)(quoting Acevedo–Diaz v. Aponte, 1 F.3d 62, 67 (1st Cir. 1993)(emphasis added). In Diaz-Bigio, the First Circuit specifically stated:

> [t]he employee's burden of proving motivation "is **more substantial** than the burden of producing prima facie evidence in, for example, the first stage of a Title VII discrimination case." Guilloty Perez v. Pierluisi, 339 F.3d 43, 56 n. 11 (1st Cir.2003). The employee "must produce sufficient evidence of motivation at the initial stage such that 'the burden of persuasion itself passes to the defendant-employer.'" Id. (quoting Acevedo–Diaz v. Aponte, 1 F.3d 62, 67 (1st Cir. 1993)).

2011 WL 2557003, at *6, n. 3 (emphasis added). In the instant case, as discussed above, Plaintiff did not make a *prima facie* case of retaliation under Title VII because he did not present sufficient evidence for a reasonable jury to conclude that he was dismissed from his employment because he filed a sexual harassment complaint. Thus, Plaintiff has not met the more substantial burden of proving retaliation under Section 1983.

CIVIL NO. 07-1362 (JP)          -20-

### III. MOTION FOR A NEW TRIAL

Defendants move this Court, in the alternative, for a new trial pursuant to Rule 59. Rule 50(c)(1) provides that "[i]f the court grants a renewed motion for judgment as a matter of law, it must also conditionally rule on any motion for a new trial by determining whether a new trial should be granted if the judgment is later vacated or reversed." Fed. R. Civ. P. 50. As such, the Court hereby conditionally **GRANTS** Defendants' motion for a new trial on the ground that failing to do so would constitute an injustice because the jury's verdict against Defendants and award of $500,000.00 to Plaintiff was not supported by legally sufficient evidence at trial.

### IV. CONCLUSION

In conclusion, the Court finds that the evidence presented at trial points so strongly and overwhelmingly in favor of Defendants that no reasonable jury could have returned a verdict against Defendants. For the reasons stated herein, Defendants' motion for judgment as a matter of law is **GRANTED**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 12th day of July, 2011.

                                             s/José Antonio Fusté
                                             JOSÉ ANTONIO FUSTÉ
                                    UNITED STATES DISTRICT JUDGE